STATE of Maine

v.

Donald RING and Ricky Waugh.

Supreme Judicial Court of Maine.

June 6, 1978.

Frank Harding (orally), Dist. Atty., Rockland, for plaintiff.

Stanley W. Karod (orally), Camden, for Donald Ring.

Stanley P. Cohen (orally), Waldoboro, for Ricky Waugh.

Before McKUSICK, C. J., and POMEROY, WERNICK, ARCHIBALD, GODFREY and NICHOLS, JJ.

PER CURIAM.

Appellants Donald Ring and Ricky Waugh bring this appeal from judgments entered following a jury trial in the Knox County Superior Court. Appellants were tried jointly for attempted escape, in violation of 17–A M.R.S.A. §§ 152, 755, from the Maine State Prison.

Appellants assert two issues on appeal. They first challenge the sufficiency of the evidence [1] to demonstrate that there were the overt acts or intent necessary to constitute the offense of attempted escape. They next challenge the trial court's refusal to

---

1. Appellants moved for acquittal both at the close of the State's case and at the conclusion of all the evidence, thereby saving this issue for appeal. *E. g. State v. Pullen*, Me., 266 A.2d 222, 229 (1970).

grant their motion to dismiss, such motion having been generated by the State's failure to furnish a Bill of Particulars as requested by appellants.

We deny the appeal.

The record shows that on July 28, 1976, the date of the alleged attempted escape, both appellants were incarcerated in the Maine State Prison where they were serving sentences imposed for prior crimes. They had no official permission to be absent on that day. A prison guard testified at trial that he had seen appellants walking together in the prison yard around 1:00 p. m. One appellant was observed carrying an unconcealed "rope"[2] and a hammer.

When it later appeared that neither appellant had showed up for the 4:00 p. m. cell count, a search of the prison was undertaken. Eventually both appellants were discovered in the "steam cage", a dark, enclosed, unused portion of the prison. Subsequent searches revealed the presence of the "rope" and hammer hidden in crevices in the room.

Appellant Ring chose to testify on his own behalf. He basically contended that he and some other inmates had been drinking "homebrew" and had decided to hide in the steam cage so that their intoxication would not be discovered. While this story was corroborated by another inmate, the bag out of which appellants had been drinking was never discovered. Appellant Waugh decided not to testify.

Appellants first contend that the evidence was insufficient to prove that they intended to escape. They further claim that the evidence demonstrated, at most, mere preparation for an escape, not the requisite overt act.

We disagree.

 As appellants contend, intent to "leave[s] official custody" or to "fail[s] to return to official custody following temporary leave" must be proven in order to establish a violation of 17–A M.R.S.A. § 755(1). Moreover, appellants are correct when they argue that in proving an "attempt", the State must prove more than mere preparation; it must prove "a positive action . . . directed towards the execution of the crime." *State v. Charbonneau*, Me., 374 A.2d 321, 322 (1977).

Our task in assessing the sufficiency of the evidence on these two points, however, is not to retry the case or to substitute our impressions of the facts for those of the jurors. Our function is merely to ascertain if the jury was warranted in finding for the State. *State v. Worrey*, Me., 322 A.2d 73, 77 (1974). A witness' credibility is a jury matter. *E. g. State v. McDonough*, Me., 350 A.2d 556, 561 (1976).

The jury here was justified in rejecting the testimony that appellants were in the "steam cage" solely to avoid detection of their intoxication. The fact of being hidden and the fact of their possession of "rope" and a hammer could have demonstrated to the jury that appellants had an intent to escape and that they had taken actions "directed towards the execution of the crime." This was a justified finding despite the fact that the actual escape might have been difficult to execute under the facts presented in this case.

 We now turn briefly to the allegedly erroneous failure of the trial justice to dismiss this case because of the State's failure to supply a Bill of Particulars. No reason for the State's failure to supply the Bill appears on the record. While we do not condone this failure by the State, we nevertheless fail to find that anything other than harmless error, at most, resulted from the State's conduct. The Superior Court was clearly under no obligation to dismiss the indictments under the circumstances here. A party who believes himself aggrieved by the failure of the State to comply with the Court's order for a Bill of Particulars should raise that issue by appropriate motion *in advance of trial*; not after an adverse verdict had been returned.

---

**2.** The "rope" referred to in the testimony was actually a piece of cord of the sort used in the prison workshop to repair furniture.

The entry must be:

Appeal denied.

Judgments affirmed.

DELAHANTY, J., did not sit.